The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention. For the Court is now sitting. God save the United States and this Honorable Court. All right, thank you. Ms. Leaston, if I said that correctly, we're ready to hear from you. Thank you, Judge Traxler. Good morning, may it please the Court. I'm Jennifer Leaston here on behalf of the appellant, Jamaal Evans. Our contention in this case, Your Honors, is that the district court erred in denying Mr. Evans' motion to dismiss the 924C count because carjacking, as set forth in 18 U.S. Code, Section 2119, does not categorically qualify as a crime of violence. As that term is defined under 924C. To qualify as a crime of violence under 924C, the offense in question must have, quote, as an element, the use, attempted use, or threatened use of physical force against the person or property of another. That's subsection A. Or, the offense has, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. That's subsection B. And so you have the force pronged under A and the residual clause under B. And, of course, to determine whether the offense in question qualifies as a crime of violence, we are using the categorical approach, which means that we're not looking at the actual facts of the offense in question, but rather whether the crime by its elements qualifies as a crime of violence. So, carjacking under 2119 has the following elements. First, that the defendant has the intent to cause death or serious bodily harm. Now, the Supreme Court in Holloway made clear that this intent to cause harm can be a conditional intent only, and it doesn't have to be carried out. The conditional intent to cause harm is only if the victim does not voluntarily relinquish the property. So, that is only a conditional intent. So we think that there's, yes, sir, Judge Shedd. Doesn't McNeil foreclose this argument? So, Your Honor, we contend that McNeil does not foreclose the argument. Now, obviously, we have the element. It's the same language, isn't it? It is the same language. But, of course, the Supreme Court in Holloway, and again in Castleman, has said that even if there's the same language in a statute, that each all statutory language, even if it's plain and even if it's identical, has to be interpreted according to the context. So why wouldn't we interpret it the same way? Right. So, you're not bound by McNeil. So, yes, the question is, is there any reason for this court to interpret intimidation in the context of a carjacking differently from intimidation in the context of bank robbery? And I, my argument on that point, Your Honors, is that carjacking has two, I think, distinct features that makes it much easier for a carjacking, for the taking to be accomplished without the threatened use of force. And here are those two features. One, a car, by its very nature, is inherently mobile. That makes it much easier to actually take a car without invoking any threatened use of force. Because one of the elements, of course, is that the taking has to be from the person or presence of another. And there are many, many cases holding that presence. It means that the driver of the car doesn't have to be in the car at the time of the taking. They can be 10, 20 feet away. And I know personally I'm very bad about getting out of my car, leaving it running, leaving the keys in the car. What about bank robbery of a mobile ATM? What if a bank has a mobile ATM? It's mobile. What about robbing that? That would still be bank robbery. You said it depends on the mobility of the vehicle. Well, my point there, Judge Shadd, is just that it's easy for me as a carjacker to get in the car and accomplish the taking of the car without using actual force against the driver. And once I'm inside that car, it's then very easy for me to drive away. Now, the second feature that I'd like to highlight... Aren't you ignoring the intimidation component here? So... And didn't we recently say that in the doctor opinion, that intimidation necessarily includes the threat of violent force? So, again, yes. In Dr. Anne McNeil, you have robbery and you have bank robbery. And I'm just trying to point out that I think that for carjacking, it's easier to intimidate without the threatened use of force because once you're in control of the vehicle... If I turn around and I see someone in my car, I'm going to be intimidated. I would also like to point out that because it's a car, it's our personal property, we often keep things in our car that are very valuable to us but may not be valuable to the carjacker. And that gives the carjacker a unique ability to be placed in a bargaining position where they can bargain away your acquiescence to allow the taking without the threatened use of force. For example, a lot of people drive around with their dogs in their car. I drive all the time with my chocolate lab. If I turn around and see someone has gotten into my car and my chocolate lab is in the car, I'm going to be terrified because I don't want them to take my dog. The carjacker can then say, look, you don't make a fuss. I'm going to drive away. I will let you take your dog out of the car. Now, the same thing can be true with a child. Now, we see in the news all the time where we have carjackers who get in the car and then realize, oops, there's a baby in the backseat. I think that would be not just intimidating, that would be terrifying. And I, as a mother, would be screaming outside the car. The carjacker, yes, Chet. Can it possibly be that in looking at criminal convictions in federal court, we're now reduced to talking about whether or not there's something of value like a dog to negotiate down the crime? Are we reduced to that? I mean, it may not be your fault. It may not be your fault. But you obviously think that's a valid argument under the Supreme Court and our rulings. Are we actually at that point that we talk about whether or not there's something of value in a car to eliminate the rulings on force by intimidation? You think that's how far we have digressed? Your Honor, and I certainly and I appreciate your concurring opinion and false, talking about the categorical approach. The categorical approach is what we have. And so, in other words, don't blame you, blame the categorical approach. Well, I'm just trying to point out that I do think that it is possible to accomplish a carjacking without even the, with no threat, no threat of force made to anyone. But let me ask, but in the McNeil case, didn't we rely on other cases that in fact looked at that language under the carjacking statute? Yes, Your Honor, there was one. Isn't that an indication that we think then that carjacking does fall within the McNeil case? Your Honor, I would argue, I'm not sure that anyone in McNeil made any sort of argument as to carjacking. And I'm simply trying to... I know that, but the court relied on cases that talk about the carjacking. Well, it was Moore and Muhammad, wasn't it? Weren't there two cases? Yes, Your Honor. I believe that's correct. Okay. But doesn't that indicate, at least give some indication, that in McNeil that we think that those, it gives some credence to the argument that the carjacking statute is the same as the bank robbery statute, doesn't it? Your Honor, I would just simply repeat that I don't believe that this court is bound by McNeil. Okay. But that, yes, Judge Keene. Counsel, I also have a question. We're talking here about a case that is not, we're not trying to figure out a criminal history, as we are usually when we employ the categorical approach and modified categorical approach. We know in this case, because it was contemporaneous, we know what the indictment said. Correct. I mean, why are we even going through the gymnastics of the categorical approach when this isn't a criminal history case where we're worried about looking into past cloudy records and making assumptions and maybe coming up with incorrect conclusions? Here we've got it right in front of us. He shot both guys in the leg. He was charged under the indictment that requires, I mean, the section of the statute that says that if serious bodily injury results, subsection 2. So why do we even need to consider this? So this, so we do have to use the categorical approach. Why? For several reasons. One, the language of the force clause of the 924C force clause speaks directly to the categorical approach in that it states that the crime of violence has to have as an element the use, attempted use, or threatened use of force. And it certainly does because this required that serious bodily injury result, the crime for which he was convicted. Correct, Your Honor. But as this Court made clear in Torres-Miguel, just because a bodily injury is the result of a crime doesn't mean that necessarily that force has been used. And keep in mind as well that the bodily injury does not have to be to the victim of the carjacking. The bodily injury can occur to anyone just during the course of the carjacking. So back to the categorical approach. So it is an elements-based approach. Congress has unequivocally declared that intent. Also, this Court in McNeil, in Fuertes, in the false opinion that Judge Shedd was a part of, this Court says there's no difference in applying prior convictions versus contemporaneous convictions. This Court is bound by that precedent, and until I think an en banc panel of this Court overrules that, I think that the categorical approach is what we're using. I believe the government agrees with me on that point. I just wanted to address quickly the government's argument that the offense here is... But let me also say, to catch up on the points you just answered, I think this Court has talked about using the categorical approach for the instant offense, but I want to move to something else. Yes, sir. There is, you don't have to belabor this, but there's a very strong argument that Castleman has vitiated overridden Torres-Miguel. Correct? There is an argument for that, an argument that this Court in McNeil said didn't give a lot of credibility to. I know that, but other circuits certainly have. They have, Your Honor. Okay. All right. Thank you very much. You want to go to another point you said? I just wanted to address quickly the divisibility argument that the government made, because I realize I didn't really address that in my reply brief. I would just point out quickly that the government is trying to argue that the offense is further divisible based on divorce or intimidation, and is arguing that in the plea agreement that Mr. Evans didn't try to protest when the government gave its recitation of the facts, and is arguing that the offense is divisible because Mr. Evans agreed that it was a forceful carjacking. And I would just say that's not how this Court applies the divisibility analysis, and clearly that the by force or intimidation is just a means. Those are not separate elements. They're just means to interpret, to achieve the carjacking. And I would also point out that we are, of course, appealing. Our plea agreement preserves Mr. Evans' right to appeal from the denial of his motion to dismiss, which was well before he pled guilty, obviously. So we have to look at just what the trial court had in front of it at the time, which was simply the indictment, which included force, violence, and intimidation. So I would just point that out. And I understand this Court is probably inclined to rule on this offense under the force clause, but I did want to just address very briefly the residual clause, just to point out that this Court in McNeil did say that 924C's crime of violence definition, the residual clause there, that the definitions of residual clause in the Armed Career Criminal Statute and for 924C, the McNeil Court described those two provisions as strikingly similar and said that decisions for one would be persuasive as to the other. And, of course, as the government's 28J letter points out, the Seventh Circuit and Cardena, there is a current circuit split on the residual clause of 924C. This Court has a number of cases before it dealing with the residual clause of 924C. Many of them have been placed in abeyance pending the Supreme Court's decision in DiMaio. So I would just tell the Court that if this Court is inclined to reach the residual clause issue, I think it might be prudent to place the case in abeyance pending the Supreme Court's decision in DiMaio. If there are no other questions. Okay. Thank you. I'll save the rest of my time for rebuttal. Thank you. Okay. Mr. Rubin. Good morning. May it please the Court. Philip Rubin on behalf of the United States. This Court said in McNeil that a taking by force and violence entails the use of physical force. Likewise, a taking by intimidation involves the threat to use such force. In our eyes, this case can begin and end with McNeil because federal carjacking or robbery of a car uses the exact same force language as federal bank robbery at issue in McNeil. They live in the same very short chapter, Chapter 103 of the United States Code, which defines robberies and burglaries. And many of those offenses use this exact same framework. And the bottom line is that where Congress uses the same terms, Congress means the same thing. And I think this Court would be able to bring consistency to that by applying McNeil simply to the exact same language in this context. Now, I intend to focus on McNeil because we think that this case can be decided wholly under it, but I do hope to touch on some of these other points that my colleague raised. Now, like federal bank robbery, carjacking has this by force and violence or by intimidation language. That is a required element of the offense. But this crime actually goes further than the bank robbery statute at issue in McNeil because not only is that required, but the defendant also has to have the intent to cause death or serious injury if necessary. And more than that, I think as was mentioned with my colleague, I think Judge Keenan, you mentioned this, that in this particular defendant pled guilty to 2119-2, which means another element that he actually caused serious harm to the victim. And that's an element of the offense in this case as well. But really, we can stick to just the first of those, that the defendant must take the car from the person or presence of another by force and violence or by intimidation. And, Judge Shedd, you mentioned that there were two cases in McNeil. That was the Moore case from the 11th Circuit and the Muhammad case from the 2nd Circuit that this court specifically cited as examples of how to interpret that phrase. The court said in McNeil, Our sister circuits have uniformly ruled that other federal crimes involving takings by force and violence or by intimidation have as an element the use, attempted use, or threatened use of physical force. And in citing Moore and Muhammad, this court agreed with the reasoning of those cases. Now those cases, my colleague argued, were before the Johnson decision in 2010 that defined what physical force means. But there's really two responses to that. The first is that the McNeil panel expressly considered the 2010 Johnson case and said that that didn't change the analysis and that they were fully consistent. The second is, at least in the 11th Circuit's case, in 2016, that court has cited to Moore and affirmed its holding that carjacking qualifies under the force clause. And that is a case called In Re Smith that is 829 F 3rd 1276. And so if those were no longer good law, I think that would be news to those circuits. I haven't seen the 2nd Circuit suggest that they think Muhammad is no longer good law at all. And so what we're asking is for consistency. Because what the defendant hasn't offered is any reason that the same language in 2119 should mean something different. It's literally a couple pages back in my U.S. code book. And I would also note that carjacking is the newest offense. It's at the end of the chapter. It was added in 1992, whereas many of these other robbery offenses came about much earlier in around the late 1940s. So Congress, knowing that language existed with these other robbery crimes, added a new robbery crime and used the same language. That's a striking similarity. And the Supreme Court, in cases such as Smith, has rejected the notion that it should interpret the same language to somehow mean something entirely different in different sections of the statute. I think that reasoning would be well applied here. My colleague offered a couple of new things today that I was not expecting about how one might actually commit carjacking in a way that wouldn't involve threatening to use force. I don't think we have to get too far into that. And the reason is, first of all, there are no cases to support that. And in McNeil, the defendant in McNeil, the defendants had suggested you could rob a bank by threatening to gas the employees. And this court rejected that and said, you haven't offered any cases to support that that's actually the way bank robbery is committed. And it's certainly not the way we see bank robbery as committed. I think that point would be well taken here. Because I see no evidence of someone actually fulfilling the elements of carjacking by taking a car where the driver is 20 feet away with the car running while their dog is inside. Not only are there no cases, I don't think that would fulfill the elements of the crime. Because I don't think that would involve intimidation. You can certainly have a taking of property from someone that isn't robbery if you take the property without force and violence or intimidation. And I think, Ms. Lyston, the examples that she offered this morning would be simply theft of a car. They wouldn't be car robbery, otherwise known as robbery. Well, I guess, too, if somebody 20 feet away, I'm just thinking about this, screamed and ran toward the car saying, leave my dog alone, that might be proof of no intimidation. That's right. I think that's a pretty bold move for someone to do. I'm not saying I wouldn't do it myself. But I don't know. And I think it would be a lack of intimidation. No, wait now. Wait now. I don't want you to admit to a crime in front of the court now. Certainly not. I know we're on camera, but we're still in court. But the point is, if it requires intimidation, if somebody charges forward and challenges the person attempting to commit the crime, that might be strong evidence. And I bet a defense lawyer would say that's strong evidence of lack of intimidation. I think that's right, Your Honor. I think that would be the argument. Because the government is going to have to prove this intimidation. And, frankly, the McNeil case informs that as well because McNeil says that intimidation in these statutes is the threatened use of force. So that would mean that the government would need to prove that the defendant threatened to use force in these kinds of crimes. And so in these hypotheticals, the problem is simply that they're not carjacking. They don't prove anything about this case because they just don't think they're carjacking. And, again, this court thought about the effect of the case law over the years, including the 2010 Johnson case. It looked at other circuits' case law, including on carjacking, and thoughtfully concluded not just – obviously the holding of McNeil is bank robbery, but the analysis of McNeil is about what this language means, and we just think it should mean the same thing. And then, of course, in this case, I don't think that you need to reach this next point, but this defendant actually caused bodily injury. That's an element of the crime that he pled guilty to. And so at the end of the day, what you would have, in order to say that this crime doesn't count as a crime of violence, you would have a defendant who robs someone of a car intending to cause death or serious bodily injury, doing so by violence or intimidation, and actually causes serious injury. And the conclusion would have to be that is not a crime of violence. And I think that might just go too far, and I'm mindful of Judge Wilkinson's concurrence in the Docker case a couple weeks ago that whatever Congress meant when it tethered, in this case, ACCA's sentencing enhancement to prior convictions, it did not pass a statute aimed at violent acts, only to have patently violent acts called by some other name. Carjacking facially is one of the more just clearly violent acts in the federal code. It doesn't always result in injury, but the fact that Congress actually added to it that you have to have the intent to cause death or serious bodily harm if necessary goes beyond most robbery crimes. In the Supreme Court, my colleague mentioned the Holloway decision. Holloway wasn't about the issue we're talking about this morning, but when discussing the carjacking statute, the Supreme Court and that's nice commentary, but it may not matter under the categorical approach. Everybody knows that person beat up somebody. Everybody knows what happened. I mean, that just may not matter under the categorical approach. In fact, I think it likely doesn't matter. You have to look at the elements of the crime. I certainly agree that you have to look at the elements, but I think the things I listed there are the elements of the crime. You have to have the intent to cause death or serious bodily harm. That's an element of the crime. In the case of this defendant, you have to actually have caused serious bodily harm. That's an element. You have to have taken the vehicle from the person or presence of another by force and violence or by intimidation. That's an element of the crime. So what we're saying is that you can look just at the elements and reach that conclusion. And the Supreme Court in Holloway when describing the carjacking statute said, and I'm quoting from the case, Congress intended to criminalize the more typical carjacking carried out by means of a deliberate threat of violence. Now, Holloway wasn't about the categorical approach. It wasn't about this issue. But when discussing what this statute was intended to do, Congress said what I think everyone on the street would think. Carjacking is a violent crime. It is accomplished by the use of the threat of violence. And so I think, as I said at the beginning of the argument, this case can and should begin and end with McNeil because McNeil has already interpreted this language. Do you think people think that murder is a crime of violence, a forceful violence? I think people do think that, Your Honor. And I think they sure do. They sure do, don't they? But murder doesn't always qualify, does it? Well, I'm not aware of a case, but I am worried about murder and whether it would count. And that actually – Well, in Torres-Miguel, we talk about poisoning somebody, not qualifying. That's correct, Your Honor. People on the street would think that's crazy, don't you think? I do think that, and I think that brings the problem to Torres-Miguel. No, I'm not commenting on the case now. I'm commenting on your standard of what everybody on the street thinks. I – you know, Your Honor, I do think that there should be some relationship between – I don't think – obviously, we don't take a poll on whether something is violent to determine under the categorical approach whether it's violent or not. But I would suggest that, and I think the Supreme Court's case law is consistent with this, that there should be a relationship. That I think it does harm to the work that we do when people on the street can't recognize what is and is not a crime of violence, particularly when, under ACCA, what is undoubtedly a crime of violence is breaking and entering. There's no quite – or felony, rather, under ACCA. It's an enumerated offense. North Carolina breaking and entering counts, whereas common law robbery doesn't count. And that is certainly the way the law works sometimes. But I do think there is some value in assessing the relationship between sort of what we would expect and what we wouldn't. And I do think that if the end of the case law is that first-degree murder is not a crime of violence, I think it calls for a reexamination of the case law. I do, respectfully. And Torres-Miguel is a case that was well-reasoned at the time, and it was assessing a very unusual California statute that made it a crime to threaten to commit a crime that would result in death or injury. It's a pretty unusual crime itself that it was looking at. And in Torres-Miguel, the court said, Judge Shedd, as you alluded to, that poisoning someone is not a use of force. But, and again, as you mentioned earlier, Judge Shedd, the Castleman decision is in direct conflict with that from the Supreme Court. Now, Castleman came later. The Torres-Miguel court didn't have the benefit of Castleman. But a year later, Mr. Castleman made the same argument. He said poisoning someone is not a use of force, and the Supreme Court said no. It said that the act of sprinkling the poison in his example is not the force. The force is the using poison to cause this harm to someone. So the Supreme Court's decision in Castleman, I would maintain, is directly at odds with Torres-Miguel. And that is why the Ninth Circuit has expressly held that Torres-Miguel is not good law. Let me ask this question of you. Maybe this is beyond, but it seems to me sprinkling the poison would be a force. It would be an indirect force. Do you have any idea why the Supreme Court said that was not force, the sprinkling of the poison? Why do you think they declined calling that force? I think that's well taken, Your Honor. I think what they were saying is you have to look at the whole picture. I know that, but I'm asking you specifically, do you have any idea why they would decline from calling that, the sprinkling, the force, and it would be a force used with an indirect result? Why do you think they did that? I actually think that may be what they were functionally saying, because in another example they talked about how if you accepted that poison wasn't force, then shooting someone wouldn't be force either. Let me ask you this. Do you think it might be to cover the situation where there was not even any indirect force used? So you talk somebody into walking out of a door and falling 30 floors. So in other words, you think the court left that open so that even it's broader than indirect force? I mean, this may be you just talk somebody or put somebody in a situation where you have nothing to do. You don't even set in motion. In other words, you ask somebody to step out and pick your wallet up from the middle of a road. You didn't make them. You didn't do anything to push them in the road, but yet you know a car is going to come by in two minutes and the car hits them, and you still might be guilty of some degree of murder. You think the court was trying to even broaden out that whole concept, get beyond even direct force being necessary? I'm not sure of the answer to that, Your Honor. I think that's a very good point, and I don't want to overstate the court's opinion in Castleman. I don't know that they reached that, and I don't know that they thought about it in that much detail. I know that they said that poisoning someone is, and what they said is that the harm, and they were talking about indirect force, which I think is what you were getting to, Judge Shedd. Right. That the harm occurs indirectly rather than directly as with a kick or a punch does not matter. That's the quote from Castleman. And I think that, at the very least, is something that should be taken as their definition of force. It can be indirect. Thank you. And I don't think the court would need to reach Torres-Miguel. I will say that it comes up a lot. It comes up frequently in our cases, and we're constantly on the district court level, circuit court level, assessing whether Torres-Miguel is good law. And right now, certainly the Seventh and Ninth Circuits have called it into doubt, but also district courts in this circuit continue, even after the footnote in McNeil, the District of Maryland and the Eastern District of Virginia have suggested that it's not good law or said that it isn't good law, and out-of-circuit district courts. So when the court has an opportunity to definitively decide that, I think that will be useful for practitioners. Whatever the court's answer is, we think it should be that it's no longer good law, but whatever the court's answer, it will be useful. I would then, unless the court has any questions about those things, I would briefly just discuss divisibility, unless the court has questions. I only wanted to touch on this very briefly because it came up. I don't think the court needs to reach divisibility, but Judge Keenan, I'm mindful of what you asked during my colleague's argument about whether the categorical approach should apply here at all, because this isn't past convictions. It's contemporaneous conduct. Now, it is our position that the categorical approach applies, but the divisibility argument that we laid out in our brief, I think, tries to recognize the things that you were talking about. Because it's contemporaneous conduct, we can tailor indictments. We can narrow them down. Yeah, but Mr. Rubin, when I was talking about a contemporaneous offense, not contemporaneous conduct, and was suggesting because the indictment, we knew the crime for which he was convicted, he was convicted of subsection 2. So it wouldn't be that different from saying categorical approach, because an element of that crime very clearly is violent. I see, I see. You see what I'm saying? I'm not talking about conduct. No, there's no need to go there. But simply where you have a contemporaneous offense of conviction, why go through? I don't know that we have any cases that say you have to do that. Certainly falls, the counsel cited, went through the categorical approach, but I don't think we have any cases that say you've got to do it. And I'm just wondering what's the logic if you have the indictment in front of you. Not conduct, but the offense of conviction. And I hope I didn't misunderstand earlier, but I am also talking about the categorical, like about elements and not conduct. Because I think we may be talking about the same thing. I hope that we are. Because what we're suggesting is, if there's a question about whether force and violence versus intimidation counts, we could have an indictment that just says force and violence. We can take that indictment to the grand jury, and they will never hear about intimidation. If it goes to a jury trial, the jury instructions, they will omit intimidation. That can certainly be done, and it's been done in cases in the Eastern District of North Carolina. So then when you go to look at it under the categorical approach, you look at the indictment, and you know it wasn't an intimidation crime because it's not in the indictment. It's not in the jury instructions. It was only force and violence. And I'm a big believer in looking at first principles, and I think the first principles that are behind the categorical approach is that we must be sure, 100 percent sure, that by virtue of the conviction, this defendant must have either used, attempted to use, or threatened to use physical force. There can be no room for doubt. And that's what the categorical approach does. And it exists for reasons that relate to the Sixth Amendment and avoiding many trials. But its purpose is we have to be sure. Yeah, but not really. But if you had approved documents like his statement of what he did, you may not have it. But if he says under this conviction, past conviction, yes, I did shoot that person in the head, the categorical approach doesn't establish any first principle. In that case, Your Honor, I agree that we wouldn't have any worry there either. But I don't think the court would go so far. I'm not saying no. I'm just pointing this, and this doesn't go to what Judge Keenan is asking, but it goes to your answer, which is you could have a so-called categorical approach, which could still look not just what could be charged in somebody's fantasy or had been charged, but you could look under approved documents like separate Taylor or whatever you want to do to see exactly what the person did in this instant back then. And if you don't have those approved documents, then it doesn't count. But if you know exactly what they did, you would count it. And it seems to me that would make sense under your common-sense man-on-the-street approach. I think there would be some wisdom in that. It would essentially, Your Honor, be the modified categorical approach all the time. Some wisdom, some wisdom. A lot of wisdom, all the wisdom, Your Honor, all of it. Do you need to answer Judge Keenan's question, though, to finalize what you want to say to her? I do want to make sure that I did get to answer it fully, Your Honor. In this case, I don't think you would even have to go beyond the categorical approach to know that he caused harm because that is an element of the crime. In 21-19-2, that's an element. So we're not looking past elements to know that this defendant caused harm. So I don't think that's even a step forward. But in an appropriate case, I will say that we are narrowing indictments when there's any question as to whether some of these elements count and some of them don't. We're narrowing indictments when it's clear what was done in the case. And at some point, the Court may have an opportunity to tell us whether that's something we can do in its contemporaneous charges or not. I see my time has expired. Judge Keenan, I did want to make sure that I had answered your question. That's fine. Thank you. Therefore, we would just ask that the Court affirm under the McNeil case. Thank you very much. Thank you, Mr. Rubin. Let's hear the reply argument. Your Honor, just very briefly, I just wanted to make a couple of points. One, Mr. Evans' indictment does include intimidation. He was indicted for forced violence and intimidation, so I don't think there is any question here that that intimidation was a potential route for him. The other point I wanted to make, my colleague mentioned that I haven't shown the Court any cases in which a carjacking has been achieved through without the threatened use of force. And I would just point out that, respectfully, I don't actually have to come up with a case for this Court because the realistic probability test does not apply when we're talking about the force clause. And the Court in Torres Miguel made this very clear. The Court in Torres Miguel did not require the defendant in that case to come up with an actual case showing that you could violate the California threat statute through poisoning someone. And there was a lot of argument, oral argument, with the government saying, well, they haven't shown, they haven't given you one example, one case where that has happened. And Judge Motz was very clear on this point that, no, that only applies when we're talking about trying to figure out whether an offense would qualify as a generic offense under the enumerated offenses clause for the sentencing guidelines, not when we're talking about the force clause. And so I would just point that out. And I would just like to say that Torres Miguel is still binding precedent in this circuit. And so until an en banc decision from this Court overrules Torres Miguel, we are still left struggling with Torres Miguel and the implications of that decision. No, you're not correct on that point. If there's another panel decision which sees an intervening Supreme Court decision, that Torres Miguel could be overridden without an en banc decision. But I don't think that the Castle Bend, I don't think there's any implication. You may not think that, but I'm saying it wouldn't require an en banc decision to override if there is an intervening Supreme Court decision. And, of course, this Court in McNeil rejected that suggestion from the government. But in any event, Your Honors, we would simply ask that the Court reverse this case and vacate that 924C conviction. Thank you, Your Honors. All right. Thank you. On behalf of the Court, I want to tell the lawyers we appreciate your accommodating our arguments today by video. Absolutely. As always, very interesting. We appreciate your going along with us. Let's get ready for the next. I would just say that it's always an honor to appear before this Court regardless of the location. And I suppose that we can just do the virtual handshake now.
judges: William B. Traxler, Jr., Dennis W. Shedd, Barbara Milano Keenan